CASE 85—PETITION ORDINARY—APRIL 1.

# Thompson v. Brannin, Brand & Glover.

APPEAL FROM JEFFERSON COURT OF COMMON PLEAS.

1. SALES OF PERSONAL PROPERTY—PASSING OF TITLE.—Under a contract for the sale of personal property, if any thing remains to be done by the vendor for ascertaining the weight or extent or price of property sold by him, whether the sale vests the right of property in the vendee presently or not until the thing has been done by the vendor for ascertaining the weight, extent or price of such property, depends upon the intention of the parties manifested by the character of the contract, or circumstances under which it was made; and the question may sometimes be determined by the custom of the trade in respect to a particular commodity.

In this action to recover the purchase price of tobacco which was destroyed by fire before it was delivered, it was competent for plaintiffs to show, in the absence of an express agreement between the parties in regard to manner of ascertaining net weight of the tobacco, that according to the custom of the tobacco trade, defendant, as purchaser was required to take it at the last ascertained weight, looking to plaintiffs to make good any loss or diminution.

2. SAME—Even if the title to the tobacco was according to a fair construction of the contract not to vest until the quantity of tobacco and certain amount of price were ascertained, it was so vested when those things were done by plaintiffs in the manner indicated.

3. EVIDENCE—ORIGINAL ENTRIES.—Independent of the provision of the Civil Code authorizing a person to testify for himself as to correctness of original entries, it was competent for plaintiffs to read to the jury from their warehouse books the original entries in reference to the alleged sale, and to exhibit the unsigned sale notes or invoices, for the purpose of showing they had complied with the conditions of the sale, or were ready to do so.

4. INSURANCE BY WAREHOUSEMAN FOR BENEFIT OF PURCHASERS.— Defendant was entitled to his *pro rata* share of the money collected on open policies of insurance which plaintiffs had obtained prior to their sale to him. and which were in force at the time the warehouse was destroyed by fire, as the policies were not only upon tobacco owned by plaintiffs, but upon tobacco " sold but not delivered."

WM. LINDSAY FOR APPELLANT.

1. The sale was not complete when the negotiations between the parties closed. (2 Addison on Contracts, sec. 568; 1 Benjamin on Sales, secs.

Thompson v. Brannin, Brand & Glover.

365, 414–417; Newcomb-Buchanan Co. v. Cabell, 10 Bush, 467; Brown, &c., v. Childs, &c., 2 Duv., 314.)

2. A custom must be known to the party sought to be bound by it, or " it must be of such age, such uniformity of observance, such certainty and fixedness of character, and such notoriety that a jury would feel clear in saying that it was known to the party sought to be affected by it." (Kendall v. Russell, 5 Dana, 503; Huston v. Peters, 1 Met., 562; Caldwell, &c., v. Dawson, 4 Met., 126.)

3. Since parties have been made competent witnesses their books, even when regularly kept, and books of original entries, can be used only for the purpose of refreshing their recollections. (Wharton on Evidence, sec. 679; Nichols v. Haynes, 78 Pa. St., 176; 1 Greenleaf on evidence, sec. 117; Brannin & Smith v. Foree's Adm'r, 12 B. M., 508.)

4. It matters not how the question of the transmission of title may be settled, we have the fact that the 68 hogsheads were "not delivered," and, therefore, were covered by the insurance policies held by appellees.

STONE & SUDDUTH on same side.

1. Where a commodity has been sold by the pound, and the quantity and price are necessarily to be ascertained by weighing, the title does not pass to the buyer until the seller has actually weighed the commodity and thus ascertained the quantity and price, unless there is an express agreement between the seller and buyer that the title to the commodity sold shall pass before the weighing is done, and the quantity and price ascertained thereby. This principle was wholly left out of the instructions given by the court below, and was vital to the appellant in maintaining his defense. (Benjamin on Sales, sec. 319, p. 244; Jennings v. Flannagan, 5 Dana, 217; Withers v. Lyss, 4 Campbell, 237; Crawford v. Smith, 7 Dana, 59; Brown & Long v. Chiles, 2 Duv., 314; Story on Contracts, sec. 801; Parsons on Contracts, 441–6; Wells v. Maley, 6 Ky. Law Rep., 77; Nesbit v. Burry, 25 Pa. St., 208; Joyce v. Adams, 8 N. Y., 290.)

By statute in this State, the duty on the part of a seller who is a warehouseman to weigh tobacco after the sale, is made imperative, and not left to a mere stipulation in the contract. (Gen. Stats., p. 1265.)

2. If the title to the tobacco passed at all, it must be regarded as "sold but not delivered," and was, therefore, covered by the policies of insurance. (Home Ins. Co. v. Baltimore Warehouse Co., 93 U. S., 541–48; Phœnix Ins. Co. v. Erie Transportation Co., 117 U. S., 324; Ætna Ins. Co. v. Jackson, Owsley & Co., 16 B. M., 242–258.)

JOHN L. DODD for appellees.

1. The title to the tobacco had passed. (2 Kent's Comm., pp. 658 et. seq.;

1 Parsons on Contracts, 6th ed., p. 529; 1 Benjamin on Sales, sec.
319; *Idem*, secs. 418 to 435; Ferguson v. Northern Bank of Ky., 14
Bush, 563; Newcomb-Buchanan Co. v. Cabell, 10 Bush, 468; Brown
& Long v. Chiles, 2 Duv., 320; Anthony v. Wade, 1 Bush, 110;
Duncan v. Lewis, 1 Duv., 184; Crawford v. Smith, 7 Dana, 59;
Leonard v. Davis, 1 Black, 483.)

2. Evidence as to the rules, regulations and customs of the Louisville
tobacco trade was competent.

CHAS. S. GRUBBS, O'NEAL, JACKSON & PHELPS AND DODD
& DODD OF COUNSEL ON SAME SIDE.

JUDGE LEWIS DELIVERED THE OPINION OF THE COURT.

Brannin, Brand & Glover, tobacco warehousemen
and factors in the city of Louisville, brought this
action to recover of H. P. Thompson the price of six-
ty-eight hogsheads of tobacco, containing six thou-
sand one hundred and seventy-five pounds, their
individual property, alleged to have been purchased
by him June 22, 1887, at eleven cents per pound, on
a credit of four months, interest being added; also
amount of buyer's fees at two dollars per hogshead,
less salvage of four dollars per hogshead, the ware-
house in which the tobacco was stored and its con-
tents having been, June 24, destroyed by fire; and
the appeal is from judgment against him for seven
thousand three hundred and sixty three dollars and
twenty-five cents, amount claimed, and interest from
June 23, 1887.

It is stated in the petition substantially, that when
said sale was made, exact amount of the purchase
price had to be ascertained by procuring weights of
the sixty-eight hogsheads, which plaintiffs did do on
that day in this manner: Several months prior to said
sale all the tobacco had been sampled and regularly
inspected, and the weights ascertained and separately

entered on the books of plaintiffs; and on the morning of June 22, ten hogsheads of the sixty-eight had been again weighed and placed upon their brakes for auction sale, but withdrawn therefrom upon consummation of the sale to defendant and by his order.

That thereafter, on the same day, a number of other hogsheads of the lot of sixty-eight were again weighed for the purpose of seeing whether there had been any shrinking or increase of the original weights; and finding the weights of all the hogsheads so weighed on that day corresponded substantially with former weights, and being, by custom of the trade, guarantors of correctness of said weights, they did not actually weigh all the remaining hogsheads, nor were they required to do so by the contract with defendant nor by the custom of the trade; but they thereafter took the former weights, and therefrom made out the purchase price, together with memorandum and invoice notes of each hogshead, and charged amount of purchase price so ascertained to defendant upon their books, and placed all said tobacco in control and subject to the order of defendant; all which was done according to custom of the trade and in compliance with their contract with defendant.

The defendant, denying in his answer plaintiffs sold to him said tobacco, or that he agreed to pay them therefor, states that the samples thereof, except those of five hogsheads missing, were, by plaintiffs, on June 22, exhibited, and the tobacco priced to him at eleven cents per pound, net weight, all of which was to be re-weighed; that they proposed to wait four months for payment, taking his note for purchase price, and

holding the tobacco in their warehouse, to be sold by them as commission merchants on his account as other tobacco shipped by him to them, and also retain a lien for the price thereof, and their fees, insurance and commission. But they then stated to him they could not weigh up said tobacco for several days, and that, without closing the contract, defendant expressed his willingness to take said tobacco at the price named and on the terms mentioned, provided he could inspect the missing samples, the tobacco could be weighed up, the net weights ascertained, and the invoice of the net weights and tare delivered to him.

He further states that, by law and custom of the tobacco trade in Louisville, it was the duty of plaintiffs to insure and keep insured tobacco in their warehouse for its full value, and the same was, on June 22, covered by policies of insurance for its value, or should have been. That after the warehouse and contents were destroyed, plaintiffs collected, or with reasonable dilligence could have collected, the full value of said tobacco under policies of insurance thereon held by them. And he prayed that in case of judgment in favor of plaintiffs for amount claimed, he recover judgment over against them on account of said insurance for amount of full value of the tobacco on the day it was destroyed; his answer being for that purpose made a counter-claim.

The general rule, that as soon as a bargain of sale of personal property is struck, the contract becomes absolute, even without actual payment or delivery, and the property and risk of accidents vests in the buyer,

has been often sanctioned by this court. (Willis v. Willis, 6 Dana, 48; Buffington v. Ulen, 7 Bush, 231; Newcomb-Buchannon Co. v. Cabell, 10 Bush, 460.) "But if by the contract of sale any thing is to be done by the vendor for ascertaining the weight or extent or price of property sold by him, and there be no stipulation for passing the title before such thing shall have been done, then the law adjudges the right of property, as well as that of possession, to be in the vendor, until after he shall have ascertained the weight, extent or price of the property contracted to be sold. Thus a sale of tobacco at a fixed price per hundred weight, to be ascertained by weighing, will not constructively vest the right of property in the vendee until after the tobacco shall have been weighed, and the entire quantity and price of it thus rendered certain, according to the intention of the parties. But as soon as the weight of the tobacco shall have been properly ascertained, the property will, *eo instanti*, vest in the purchaser, even though he may not yet be entitled to the possession of it without paying the price, or assuming the payment of it according to the terms of the sale." (Crawford v. Smith, 7 Dana, 59.)

But whether a sale vests the right of property in the vendee presently, or not until the thing has been done by the vendor for ascertaining the weight, extent or price of such property, must of course depend upon intention of the parties, manifested by the character of the contract or circumstances under which it was made, and the question may be sometimes determined by the custom of the trade in respect to a particular commodity.

Accordingly, in Newcomb-Buchannon Co. v. Cabell, where the question being as to title of a certain number of barrels of whisky sold but not re-gauged, the sale was decided to be absolute, and re-gauging to be done was merely to enable the parties to make a final adjustment of their accounts, the court holding it not to be true that in all cases of sales of personal property without delivery, the right of property remained in the vendor until the quantity is ascertained.

The defendant in this case substantially admits he agreed to take the tobacco upon the terms and at the price proposed by plaintiffs, with a reservation of the right to inspect the five missing samples, and proviso that the tobacco was to be weighed and invoice of the net weights delivered to him.

The plaintiffs, in their reply, deny there was such reservation in respect to the samples or agreement to re-weigh the tobacco, and both issues of fact were properly presented to the jury by instructions of the court, and found against the defendant. Moreover, the evidence shows that defendant had previously seen the lot of tobacco, and was well acquainted with all of it. And strong evidence he purchased the tobacco without such reservation is afforded by the fact of ten of the hogsheads prepared for auction sale that day being, at defendant's request, taken off the brakes and put back with residue of the lot of sixty-eight. And though the tobacco in question was individual property of plaintiffs and sold privately, it is manifest from the pleadings of both parties, the contract was made with reference to, and, as we

Thompson v. Brannin, Brand & Glover.

think may be fairly presumed, with knowledge by them of, the general and uniform custom of the tobacco trade in Louisville, and that they intended the transaction to be governed thereby, as if the tobacco had been sold by plaintiffs as commission merchants instead of owners, and at public auction instead of at private sale. Consequently, in absence of an express agreement between the parties in regard to the manner of ascertaining net weight of the tobacco, it was competent for plaintiffs to show that, according to such custom, defendant, as purchaser, was required to take it at the last ascertained weight, looking to plaintiffs to make good any loss or diminution, and duty of the court to instruct the jury upon that hypothesis, as was done.

It appears from the evidence that on the day of sale the net weight of each of the sixty-eight hogsheads and of all of them was ascertained, and entries thereof on the books of plaintiffs made, as well as invoices prepared ready for defendant, which latter, being in the nature of warehouse receipts, would have entitled him to delivery of the tobacco upon presentation of them. There, however, seems some discrepancy between the version of the parties respectively as to whether a note was to be executed by defendant for the tobacco as he contends, or whether, as stated by plaintiffs, there was an absence of any agreement in that particular, though they agree the tobacco was sold on a credit of four months. It does not, however, make any difference which version be true as regards the question of title to the tobacco; for plaintiffs would have had a right to protect themselves in case of non-payment of the purchase price.

But counsel contends it was not competent for plaint-
iffs to read to the jury extracts from their warehouse
books, showing the original entries on June 22, in
reference to the alleged sale, nor to exhibit the un-
signed sale notes or invoices of the same date. It
seems to us, independent of subsection 7, section 606,
Civil Code, authorizing a person to testify for him-
self as to correctness of original entries, it was com-
petent for plaintiffs to show in that manner they had
complied with the conditions or terms of the contract
of sale required of them, or were ready to do so.

It seems to us clear that the parties intended the
transaction to be an absolute sale of the tobacco, and
defendant was thereby vested with title to the prop-
erty. But even if the title was, according to fair
construction of the contract, not to vest until the
quantity of tobacco and certain amount of purchase
price were ascertained, it was so vested when those
things were done by plaintiffs in the manner men-
tioned. It was error in the court to permit witnesses
to give their opinion as to the legal effect of what
occurred between the parties, as it was to instruct the
jury to find whether plaintiffs had done all that it
was material for them to do by the terms of the
contract.

Although we think the evidence in this case shows
a sale of the tobacco was made and title was thereby
vested in the defendant, and he was entitled to his
pro rata share of the money collected on open policies
of insurance which plaintiffs had obtained prior to
their sale to defendant, and were in force at the time
the warehouse was destroyed by fire, the amount of

which, it appears, was forty-five thousand dollars; for, in language of the several policies, the insurance was obtained by plaintiffs on "tobacco in hogsheads, their own, or held by them on account of others, when they are legally liable, or sold but not delivered, contained in their metal-roof brick warehouse." Whether the tobacco in question was such as plaintiff was legally liable for or not, it certainly was tobacco "sold but not delivered" in meaning as well as language of the different policies; for that tobacco, though sold, had not been delivered either constructively or actually, and according to the contract as interpreted by plaintiffs themselves they could not deliver it until the weights were ascertained, and invoices and notes made out and tendered to defendant; nor were they bound to deliver it until payment of the purchase price or execution of a note therefor by defendant.

Wherefore, the judgment is reversed, and cause remanded for a new trial consistent with this opinion.