## Kentucky Motor Car Company v. Darenkamp, et al.

(Decided January 19, 1915.)

Appeal from Kenton Circuit Court
(Common Law and Equity Division).

Sales—Delivery—What Constitutes—Instruction.—An instruction "That, in law, there is a delivery of property by a seller to a purchaser when the seller places the property at the disposal of the purchaser and relinquishes to the purchaser the control and right of control of, or dominion over, the property and the purchaser takes, or accepts, the control and right of control, or dominion, over the property," correctly defined delivery, although there might have been added to it the words, "Acceptance need not be by words but may be by act or acts of the purchaser."

RICHARD G. WILLIAMS and BYRNE & READ for appellant.

ROBERT C. SIMMONS for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Affirming.

The appellant motor car company sold, as it claimed, to the appellees, Ed and John Darenkamp, who are

brothers, an automobile for $700. It appears that on October 26, 1912, Ed Darenkamp signed a contract agreeing to purchase an automobile for $700, $10 of which was paid in cash and the contract recited that the balance of $690 was to be paid "when delivery of car is tendered." On November 2, $490 was paid on the car, leaving a balance of $200 due, and a few weeks after this the motor car company brought suit against Ed Darenkamp to recover this amount.

In January, 1913, Ed Darenkamp filed an answer in which he denied that he purchased the car and said that it had been sold to his brother, John Darenkamp, and that by mistake he had signed the contract. He further pleaded his infancy as a defense.

About the time this answer was filed John Darenkamp brought suit against the motor car company to recover $500 which he alleged he had paid on the purchase price, upon the ground that the company refused to deliver to him the car he had purchased.

Thereafter the suit of the motor car company against Edward Darenkamp and the suit of John Darenkamp against the motor car company were consolidated, and in a pleading, which was at once a reply to the answer and a counter-claim against John Darenkamp, it denied the affirmative matter in the answer of Ed Darenkamp and for counter-claim against John Darenkamp sought to recover the balance of $200 it alleged he owed, and further pleaded that the car was sold to both Ed and John Darenkamp. It might here be noted that it appears from the record that John Darenkamp, on October 26th, signed a contract in terms the same as the one signed by Ed.

The controversy between these parties grew out of the fact that after the $500 had been paid, and while the car was in the possession of the motor car company at its garage, a demonstrator in its employment took Ed Darenkamp out for a ride, during which the car was badly damaged in a collision with a telegraph pole or some other object. A day or two after this John Darenkamp went to the motor car company to pay the balance due on the car, $200, and get possession of it, but when he was informed that he would have to take the car in its damaged condition, or else pay the expense of repairing it, something over $100, he declined to accept the car, and thereupon these suits were brought.

The case for the motor car company was practiced in the trial court upon the theory that the car, at the time it was injured, was the property of the Darenkamps, it having been sold and delivered to them before that time.

On the other hand, the defense was that, although the car had been purchased and $500 paid on the purchase price, the title to the car had not passed, and was not to pass until it was delivered, and delivery was not to take place until the balance of $200 was paid, which balance had not been paid when the accident occurred, and because this sum was due and unpaid the motor car company retained the possession of the car.

On a trial of the case, the court instructed the jury to find a verdict for Ed Darenkamp upon the ground that the alleged contract with him was not enforcible' on account of his infancy, and, as to John Darenkamp, the jury was instructed: ''That, in law, there is a delivery of property by a seller to a purchaser when the seller places the property at the disposal of the purchaser and relinquishes to the purchaser the control and right of control of, or dominion over, the property and the purchaser takes, or accepts, the control and right of control, or dominion, over the property. If the jury shall believe from the evidence that at any time prior to the accident and injury to the automobile, mentioned in the evidence, the plaintiff delivered said automobile to John Darenkamp, Jr., or his agents or representatives, the jury will find a verdict for the plaintiff against him for $200, with interest.''

They were further instructed that if the car had not been delivered, prior to the accident, to John Darenkamp or his agents, they should find a verdict in his favor against the motor car company for $500, with interest.

Under these instructions the jury found a verdict for John Darenkamp, on which judgment was entered, and the motor car company appeals.

The grounds relied on for reversal are, that the verdict was contrary to the evidence, and that the court erred in giving the instructions mentioned and in refusing an instruction offered by the motor car company.

It may here be observed that the only difference between the refused instruction and the one given is that in the refused instruction the jury were advised that acceptance of property ''need not be by word, but may

be by act or acts of the purchaser.'' This difference we do not regard as material under the facts of this case, and we also think the given instruction on the subject of what constitutes delivery of personal property was correct, although there could be no objection if the words taken from the offered instruction had been added.

On this appeal the argument is made for the motor car company that the trial judge made the case turn on the question whether there had been a delivery of the automobile, when the real question was, had there been a sale? But we do not think the trial judge erred in taking this view, as it appears counsel for both parties regarded the question of delivery as the only issue in the case, and, in fact, it was the only issue, as the rights and liabilities of the parties depended upon this question.

There is really no dispute about the fact that there was a sale. John Darenkamp admits the purchase of the automobile for $700, and both parties agree that $500 of this $700 was paid, but the question remains, did the title pass to John Darenkamp by virtue of this sale, or was the automobile to remain the property of the company until the whole of the price was paid and the car delivered?

There might be a sale of personal property in which the title would pass from the seller to the buyer without delivery. There are also cases involving the sale of personal property in which delivery is essential to pass title from the seller to the buyer, but whether the title passes by the sale or by the delivery is to be determined by the facts of each particular transaction. Thompson v. Brannin, 94 Ky., 490; Hagins v. Combs, 102 Ky., 165.

At the time of the accident the automobile had never been out of the possession of the motor company. In fact, it had only been used by the Darenkamps twice before the injury, and each of these times it was operated by and in the control of a demonstrator for the motor company, and was being operated by and in the control of this demonstrator when it was injured. There is also testimony to the effect that when the machine was being taken out of the garage on the night of the injury to it, the manager of the automobile company told the demonstrator not to take it out, as it had not been paid for. And we think there was sufficient evidence to support the verdict, tending to show that the car had

never been actually used by or in the possession of the Darenkamps, although the evidence on behalf of the motor car company is to the effect that when the $500 was paid the title to the car passed to the purchaser and it was being kept by it in its garage merely as an accommodation.

It should not, however, be overlooked in this connection that the written contract provided that the balance of the purchase price, $200, was to be paid "when delivery of car is tendered." It is further shown by the evidence that, as a part of the trade, the motor car company was to put a new spring on the car and a new light, and, perhaps, some other fixtures, and that none of these things had been put on the car at the time it was injured.

It may be conceded that the weight of the evidence supports the theory of the motor car company, but we think there was enough evidence in behalf of John Darenkamp to support the verdict in his behalf, and we do not feel justified upon this conflicting evidence to say that the verdict is so flagrantly against it as to warrant us in ordering a new trial.

Wherefore, the judgment is affirmed.