## Field Furniture Co. v. Community Loan Co. et al.

(Decided Dec. 21, 1934.)

826

S. S. WILLIS for appellant.

WILSON & ROBINSON, B. S. WILSON and WOODS, STEWART & NICKELL for appellees.

OPINION OF THE COURT BY CREAL, COMMISSIONER—
Affirming.

On January 19, 1933, the partnership of Josselson Bros., engaged in the furniture business in Ashland, Ky., by and through Alex Josselson, the acting managing agent of the firm, made an assignment for the benefit of creditors to David Pfeffer. Under the deed of assignment the firm conveyed to the assignee their entire stock of merchandise then on hand consisting of furniture, rugs, draperies, shades, and furniture and fixtures in the storeroom, motortrucks used in connection with the business, and also "all accounts receivable of the firm arising out of the firm's furniture business."

After accepting the trust and qualifying, the assignee took charge of it and continued to conduct the business until May 6, 1933, when, pursuant to judgment in an action instituted by him, all property and accounts in his hands were sold at public auction, and Millard F. Field became the purchaser thereof for the sum of $7,100. The property to be sold at the assignee's sale was described in a notice of sale published in a local newspaper and included "all accounts receivable of said furniture business." The notice of sale also contained a statement to the effect that the accounts receivable would be exhibited to prospective purchasers upon ap-

plication to the assignee at his office. After the sale, the assignee executed and delivered to the purchaser a bill of sale for the property sold, including "all accounts receivable [which it is understood does not include judgments or accounts in suit] due said Josselson Bros., together with supporting data consisting of all leases * * * "

Thereafter, Millard F. Field, doing business as the Field Furniture Company, instituted this action in equity against the Community Loan Company, a corporation, David Pfeffer, assignee of Josselson Bros., and Alex Josselson. The petition, after setting out the foregoing facts, alleged in substance that a number of accounts receivable and a lot of data were withheld and not delivered to him; that some of the accounts exhibited to him before the sale were not delivered to him, although he was entitled thereto; that thereafter the Community Loan Company set up claim to some of the accounts and had been attempting to collect same; and that Alex Josselson was threatening to join the Community Loan Company in suits for and on behalf of Josselson Bros., on an alleged assignment of some accounts, thereby obstructing and interfering with plaintiff in collecting such accounts; that many of the accounts had been taken from the files and were in the hands of the Community Loan Company.

He prayed that his title to all the property and accounts receivable be confirmed and quieted and that defendants the Community Loan Company and David Pfeffer be enjoined and restrained from setting up any claim to the accounts or any part thereof and that they be required to deliver to plaintiff all property and evidence of indebtedness or from interfering with the collection of accounts.

In an amended petition, it was alleged that the Community Loan Company was threatening suit against many persons owing accounts which plaintiff acquired from the assignee and in some instances had filed suits in inferior courts and had taken orders of delivery for furniture, etc. The amended pleading set out the names of something over 80 persons who it was alleged owed plaintiff accounts purchased from the assignee, some of whom are able, ready, and willing to make payment of the accounts but have been advised by counsel that it would not be safe to do so until the rightful owner of

the accounts was judicially determined and all such persons were made parties defendant. It was asked that the purchaser of the accounts in controversy be required or allowed to pay the receiver of the court the amount due subject to the orders of the court.

By separate answer, counterclaim, and cross-petition, the Community Loan Company denied the material allegations of the petition, and in a second paragraph set up a purported assignment to it by Josselson Bros., which reads:

"Ashland, Ky., Dec. 31, 1932.

"For value received, we hereby sell, assign and transfer to Community Loan Company Incorporated, each and all of the accounts listed on the reverse side of this sheet, amounting to $13,941.09.

"Josselson Bros.;
"By Alex Josselson

"Witnessed by Frank Lipsitz."

It set forth the number and names of the debtors and the amount of the account as listed on the reverse side of the assignment, the accounts being 82 in number and totaling $13,941.09. It denied that any of the purchasers named in the list owed any part of such accounts to plaintiff or that he acquired any of them from the assignee, but alleged that all such accounts belonged exclusively to it. The persons named in the list set forth are all named in the amended petition.

In a third paragraph the answering defendant set out an alleged settlement and compromise agreement under the terms of which it was to have all the accounts listed in the assignment to it from Josselson Bros., but we shall not go into a detailed statement concerning the allegations of this paragraph or the proof relating thereto, since it is not material to a decision of this appeal.

In a fourth paragraph it alleged that in the general assignment made by Josselson Bros., to David Pfeffer, the assignor executed a schedule setting out specifically the property assigned, and included in the description of the assets was the following: "Outstanding accounts for merchandise $17,399.40." That this item embraced all accounts theretofore assigned to it; that subject to payments made after the date of the general

assignment and before the date of the assignment sale, the accounts embraced in the quoted clause were sold by the assignee to plaintiff and are the accounts that were exhibited to him before the sale and the only ones purchased by him.

The fifth paragraph, which was made a counter-claim and cross-petition, asked that all parties named in the second paragraph be made parties defendant and alleged that each of them is indebted to it in the sum set opposite his name because of the assignment therein set forth, and it asked for judgment against the respective defendants. It prayed for relief accordingly and that plaintiff be enjoined from claiming or collecting any of the claims referred to in its answer.

By reply, plaintiff controverted the affirmative allegations of the answer, etc., and further pleaded that the answering defendant was by its course of conduct before and after the general assignment estopped to set up and rely on the assignment to it by Josselson Bros. The affirmative matter in the reply was controverted by a rejoinder. Thereafter by way of amended petition, plaintiff alleged in substance that the alleged assignment of the accounts by Josselson Bros. to the Community Loan Company were preferential, fraudulent, and void under sections 84 and 1908, Kentucky Statutes, and by agreement the allegations of this pleading were treated as controverted of record.

After proof was taken, the court, on final hearing, rendered a written opinion and adjudged that plaintiff recover of the Community Loan Company and David Pfeffer, assignee of Josselson Bros., accounts receivable for merchandise sold on credit after the assignment to David Pfeffer on January 20, 1933, which were added to the ledger sheets of the original accounts covered by the assignment of December 31, 1932, to the Community Loan Company, and that the Community Loan Company and the assignee deliver to plaintiff these added accounts with the original statement and data showing the amounts and nature thereof. It was further adjudged that the sale made on May 26, 1933, to plaintiff did not include the list of accounts receivable covered by the assignment of December 31, 1932, to the Community Loan Company, and that the petition of plaintiff as to such accounts, except as above men-

tioned, be dismissed, and from the latter part of the judgment plaintiff is appealing.

For reversal counsel for appellant relies on the provisions of the Statutes referred to in his amended petition (sections 84 and 1908) and argues that the circuit court in the suit by the assignee entered a decree for the sale of all the accounts receivable; the assignee advertised such sale, and appellant purchased all accounts receivable, which were duly transferred to him by bill of sale from the assignee, and therefore this purchase included the accounts attempted to be transferred immediately before the assignment, which transfer was shown and found to be fraudulent and preferential. This contention necessarily calls for a review of the material facts in evidence.

Mr. Field testified that on the day of the sale and shortly before he purchased the property sold by the assignee, he made a hurried examination of the stock, furniture, and fixtures and of the accounts receivable which were in a portable file tray in the office of Josselson Bros.; that he could not recall the names of all the parties owing accounts, but did name six or seven of the accounts in controversy; that these accounts were on loose-leaf ledger sheets, one of which is found in the record. The name of the debtor and the amount of the account was at the top of the sheet, and the installments paid and the balance due were carried in a column thereunder. These were placed vertically and alphabetically in the file tray. The evidence shows that there were several hundred of such accounts in the tray. He further testified that he had no notice that the Community Loan Company was making claim to any accounts of Josselson Bros. until some days after the sale. On cross-examination he stated that he had a conversation with the assignee concerning the inventory and accounts scheduled two weeks before the sale, and the latter stated that the amount of the accounts due Josselson Bros., as of the day of assignment, was about $17,000; and that what he had collected and would collect before the sale would reduce the amount something like $4,000 to $5,000; that the amount of accounts turned over to him by the assignee was approximately $12,000. Mr. Pfeffer testified that the first knowledge he had that the Community Loan Company was claiming some of the Josselson Bros. accounts was after the

general assignment, when Ben Josselson told him before the sale that some of the accounts that were being collected in the store were his accounts; that he replied that so far as he was concerned, they were turned over to him and he would have to carry them in his bank account. He further testified that he did not know when the Community Loan Company took the accounts in controversy from the store. Ben Josselson, a brother of Alex Josselson, testified that he was president of the Community Loan Company and that he and his wife and son were the only stockholders therein; that it had made various loans to Josselson Bros., evidenced by notes aggregating $3,070.50; that the accounts assigned to the Community Loan Company as set forth in his answer were transferred to it in satisfaction of the notes with accrued interest; that under their agreement the notes were to be turned over to Josselson Bros., but were still in his possession because they had not called for them. He further stated that at the time this assignment was made the accounts in controversy were separated from the other accounts and delivered to him; that he placed them in a separate tray or container and left them in the vault of Josselson Bros. store with the understanding that the firm would receive payment on the accounts and account to him for the collection monthly; that this was done as a matter of convenience to customers; that three days before the sale, he procured these accounts and removed them to the office of the Community Loan Company; that none of the accounts which appellant testified he saw in the tray before the sale nor any of the other accounts in controversy were in the tray at that time. He further stated that he told the assignee that the Community Loan Company owned the accounts in controversy. He never gave notice to any of the parties owing accounts in controversy that he had purchased them. He made out and filed with the assignee claims for amounts collected on these accounts by Josselson Bros., or by the assignee, and asked that they be allowed as preferred claims, but that they were allowed as general claims. He filed in evidence the notes concerning which he testified and checks to Josselson Bros., or to other persons for them corresponding in date and amount with the notes. Ben Josselson corroborated his brother in all material details concerning the transfer and assign-

ment of the accounts and the agreement under which they were placed in a separate tray and left in the vault at the store.

Frank Lipsitz, a nephew of the Josselson Bros., testified that he was present when the assignment of the accounts was executed and that they were separated from the other accounts and placed in the vault. Estil Hogsten and Frank Fugeman, clerk and bookkeeper for Josselson Bros., testified that the accounts in controversy were separated from the other accounts and placed in the vault, but they knew nothing concerning the assignment, except one of them testified that Alex Josselson told him that the accounts were to be kept separate. Elizabeth Stewart, stenographer for Ben Josselson, testified that she saw the accounts in controversy in the office of the Community Loan Company before the assignee's sale. None of appellee's witnesses, other than Ben Josselson, had any knowledge as to the time or the circumstances under which the acounts were removed from the vault. Alex Josselson testified that after the assignment of the accounts to the Community Loan Company, Josselson Bros. did not claim or exercise any ownership over them and that none of them were included in the assignment to David Pfeffer.

The chancellor in his opinion sums up the evidence and refers to some of the matters appearing from the exhibits filed which are not mentioned in our summary of the evidence. The controlling facts in evidence and the conclusions and inferences that necessarily arise therefrom are so tersely and clearly stated in the chancellor's opinion that we cannot refrain from quoting that portion of it which reads:

"In the Schedule filed by Alex Josselson in the assignment proceeding, showing the nature and and value of the assigned estate is listed:

"Outstanding accounts for merchandise $17,-399.40."

"The inventory of the assignee (which was checked against the accounts by him) likewise lists the accounts at face value $17,394.00.

"In his suit to settle the estate filed in this court he lists assigned accounts at $17,394.00.

"In the order of sale, entered in the settle-

ment suit the accounts are described as all the accounts receivable of Josselson Bros., and the notice of sale likewise so stated.

"The proof shows that after deducting the accounts assigned and sold to the Community Loan Co., from the total of the Josselson Brothers accounts on December 31, 1932, there remained approximately $17,000.00 thereof. This remainder evidently is all the Josselson Brothers intended to assign Pfeffer.

"After the assignment to Pfeffer he collected thereof about $4,000 leaving in his hands at the time of sale to plaintiff about $12,000.00 or $13,-000.00. This last figure is the one given by Pfeffer to plaintiff before the sale of the assignee.

"I believe from the record that the sale and assignment to the Community Loan Company was not only a preferential sale, but a fraudulent one as to the creditors of Josselson Brothers and that it was in violation of section 84 as well as section 1908 of the Statutes, and that if the Community Loan Company accounts had been offered for sale by the assignee, plaintiff if a purchaser under the sale would have been vested with title thereto, but the evidence preponderates that it was only intended by the assignee to sell the remainder of the accounts, to wit: $17,394.00 in face value less $4,000.00 or $5,000.00 and that plaintiff received what was sold and what he purchased. The assignee or creditors of Josselson Bros., only, if anyone, may complain of the preferential and fraudulent transfer of said accounts."

Section 84 of the Statutes, which is in the chapter relating to voluntary assignments made for the benefit of creditors, provides in substance that property preferentially or fraudulently transferred by an assignor before making a deed of assignment shall vest in the assignee, and that it shall be his duty to institute appropriate proceedings for its recovery; and upon his failure to do so upon demand any creditor may institute such proceedings; that any property so recovered shall become a part of the estate and be distributed as other assets.

834

Section 1908 reads:

"Every voluntary alienation of or charge upon personal property, unless the actual possession, in good faith, accompanies the same, shall be voided as to a purchaser without notice, or any creditor, prior to the lodging for record of such transfer or charge in the office of the county court for the county where the alienor or person creating the charge resides."

A discussion of the purpose and effect of section 84, supra, and section 1910 relating to sales, mortgages, or assignments made by debtors in contemplation of insolvency and with the design to prefer one or more creditors to the exclusion of others, is fully discussed in the case of N. T. Tipton's Adm'x v. A. J. Ball et al., 256 Ky. 816, — S. W. (2d) — decided by the court December 14, 1934, wherein it was held in effect that these sections are for the benefit of the assigned estates or of the creditors of the assignor and that right of action under either of them is first in the assignee or one standing in that relation; and that if upon demand he shall refuse to institute the necessary proceedings any creditor may do so. The case of Burnes v. Daviess County Bank, 135 Ky. 355, 122 S. W. 182, 25 L. R. A. (N. S.) 525, 135 Am. St. Rep. 467, cited by appellant, does not indicate otherwise. Generally speaking, the assignee stands in the shoes of the assignor, but in some instances and for some purposes, as indicated by section 84 of the Statutes and kindred laws, he is regarded as the representative of the creditors. Under either of the sections invoked by counsel for appellant, the assignee might have instituted an action for the recovery of the accounts in controversy, or upon his failure to do so after proper demand, any creditor or creditors of Josselson Bros. might have maintained such action. In either event, however, any recovery would be for the benefit of the creditors. None of the rights or remedies given to creditors or to the assignee as their representative under any of the statutes referred to inure to the benefit of a purchaser at a sale by the assignee. Even though the assignment and transfer of the accounts were fraudulent and preferential as to creditors, they did not ipso facto pass under the deed of assignment to the assignee nor from him to the purchaser under the bill of sale.

Evidence for appellee indicates that when the assignment of the accounts to the Community Loan Company was made the accounts assigned were separated from the others and placed in the actual possession, custody, and control of the president of the Community Loan Company.

In Kentucky Motor Car Co. v. Darenkamp et al., 162 Ky. 219, 172 S. W. 524, it was held in effect that there is delivery of property by a seller when he places it at the disposal of the purchaser and relinquishes to him the control or right of control thereof and the purchaser takes or accepts such control.

In Sizemore v. Commonwealth, 202 Ky. 273, 259 S. W. 337, 338, and Daniels v. Commonwealth, 212 Ky. 161, 278 S. W. 577, possession is defined as ''having, holding or detention of property in one's own power or command; ownership, whether rightful or wrongful.''

In Omaha & F. Land & Trust Co. v. Parker, 33 Neb. 775, 51 N. W. 139, 29 Am. St. Rep. 506, it is said that actual possession is simply having the property in the immediate control or power of the party.

The chancellor's finding that the accounts assigned to the Community Loan Company were not intended to and did not in fact pass under the deed of assignment and that appellant did not purchase them at the assignee's sale is amply sustained by the evidence. It is a rule of general application that where the chancellor's finding is in accord with the weight of the evidence or where the mind is left in doubt as to the correctness of the judgment, it will not be disturbed. King v. Gregory, 243 Ky. 231, 41 S. W. (2d) 1019; Hatfield v. Hatfield, 246 Ky. 359, 55 S. W. (2d) 5; Green v. Davis, 253 Ky. 105, 68 S. W. (2d) 750; Andrews v. Wilson, 253 Ky. 237, 69 S. W. (2d) 343.

Wherefore the judgment is affirmed.

Whole court sitting.