In re SHIPLEY STAVE & LUMBER CO.
No. 1105.

District Court, E. D. Kentucky.
Oct. 24, 1939.

Grover C. Wilson, of Hazard, Ky., referee in bankruptcy.

J. T. Farmer and C. F. Kelly, both of Lexington, Ky., and Peck, Shaffer, Williams & Gorman, of Cincinnati, Ohio, for W. C. Bartlett Lumber Co.

Craft & Stanfill, of Hazard, Ky., for trustee.

FORD, District Judge.

The case is submitted on the petition of W. C. Bartlett Lumber Company seeking review of an order entered by the referee on October 25, 1938.

The bankrupt, a Kentucky corporation, was engaged in operating a saw mill near Hyden in Leslie County, Kentucky. It purchased logs in the vicinity and sawed them into lumber of various kinds for the market. For several months before bankruptcy, its business was carried on by a receiver under orders of the Circuit Court of Leslie County.

The petitioner is a West Virginia corporation engaged in the business of buying and selling lumber with its principal office in Cincinnati, Ohio. On December 17, 1935, a contract was entered into between the petitioner and the bankrupt which provided for certain advancements to be made to the bankrupt by the petitioner upon the purchase price of "such grades of lumber, sawn timbers or furniture dimen-

sions that may be purchased to be sawn out upon its orders and cutting instructions from time to time." It further provided that upon the acceptance of such orders the bankrupt would saw out the lumber to be applied to the order and place the same in piles upon its mill yard, and upon each pile should be marked the grade, thickness, kind of lumber and estimated footage contained therein, and a card attached showing the pile to be the property of W. C. Bartlett Lumber Company. The contract expressly provided that upon the advancements being made each pile of lumber so identified and marked "becomes the property of the party of the second part." The contract required the· lumber to remain thus stacked and marked upon the mill yard during the period of drying and until it should be shipped. The remainder of the purchase price was payable when the lumber was shipped to the buyer ‎or its consignee. The bankrupt agreed to properly care for it during the period it remained in the yard, to keep it covered by insurance sufficient to protect the interest of both parties and to deliver it on board cars when directed. This contract was supplemented by an agreement of December 23, 1936, which made no alteration in the original agreement except to provide for an increase in the rate of advancements, and to set out more clearly the intention of the parties as to when the title to the lumber should pass by adding the following provision: "Upon payment of the sums outlined herein, all lumber upon which payments have been made shall immediately become the property of the party of the second part and title thereto shall immediately vest in party of the second part."

W. C. Bartlett Lumber Company filed an intervening petition asserting title to certain piles of lumber on the mill yard of the bankrupt at the time the trustee in bankruptcy took possession on December 14, 1937. The lumber so claimed by the petitioner was appraised at $3,516.09, and upon executing bond for the forthcoming of this amount if the claim should be denied, the claimant was permitted to take possession of it.

The trustee denied that title to any lumber upon the mill yard passed to the petitioner and relied upon section 1908 of the Kentucky Statutes as a bar to the claim. By counterclaim, the trustee set up a claim against the petitioner for $9,334.30 for lumber which‎ had been shipped to it by the receiver in compliance with the contract under the orders of the State Court and for the further sum of $6,671.68 representing the value of lumber shipped by the bankrupt, under the contract, within four months prior to the filing of the petition in bankruptcy.

Proof was heard by the referee and on October 25, 1938, he denied the claim of W. C. Bartlett Lumber Company to the property on the mill yard. The referee also held that the relationship between W. C. Bartlett Lumber Company and the bankrupt throughout the period of four months prior to bankruptcy was that of debtor and creditor and not that of vendor and vendee; that the delivery of lumber to W. C. Bartlett Lumber Company by the bankrupt and by the receiver for which credit was entered upon the account for advancements constituted merely a payment of indebtedness by a creditor for money loaned; that when these transactions took place, W. C. Bartlett Lumber Company well knew that the bankrupt was in failing circumstances and in receiving satisfaction of its debt in lumber it obtained an unlawful preference over creditors of the same class. An order was entered requiring W. C. Bartlett Lumber Company to account for the appraised value of the lumber delivered to it from the mill yard and to pay to the trustee the sale price of all lumber which had been delivered to it within four months prior to bankruptcy. The petition for review challenges the correctness of these orders.

The evidence shows that at the time the trustee took possession of the mill yard the lumber in question was in piles marked as the property of W. C. Bartlett Lumber Company, as required by the contract; that these piles of lumber had been sawed pursuant to orders placed and accepted, and after being so stacked and marked, the petitioner W. C. Bartlett Lumber Company had made advancements upon the purchase price thereof in accordance with the contract. In fact, due to financial difficulties of the bankrupt, the petitioner had upon numerous occasions advanced more than called for by the contract and at the time of bankruptcy it appears that the balance due for advancements was substantially more than the appraised value of the lumber marked and identified on the mill yard. The findings of the referee do not indicate the facts to be otherwise, but his ruling was based upon the finding ‎from the evidence.

that the lumber upon coming from the mill and going into the piles was not in a deliverable state as contemplated and intended by the parties. This conclusion was based upon evidence to the effect that it was the practice of the bankrupt, when it was found that the grade of some of the lumber in the marked piles might be improved to again run it through the mill and thus raise it to a higher grade. It does not appear, however, that it was undeliverable at the lower grade it had when placed in the pile and marked. It is shown that accepted orders covered all grades and advancements had been made accordingly. In view of the clearly expressed intention of the parties set out in the contract that upon the piling and marking of the lumber and the making of advancements thereon, "title thereto shall immediately vest" in the buyer, the mere fact that the vendor thereafter performed labor upon some of it to improve its grade did not alter the fact that title had previously passed. When the lumber was piled and marked and advancements made thereon, it was the intention of the parties that the title should immediately pass to W. C. Bartlett Lumber Company and the relation of the bankrupt to it thereafter was that of agent or bailee of the buyer. Hatch v. Oil Company, 100 U.S. 124, 136, 25 L.Ed. 554.

The provision of the Uniform Sales Act, cited by the referee in support of his conclusion to the effect that if the seller is bound to do something to the goods, for the purpose of putting them into a deliverable state, the property does not pass until such thing be done, is qualified by the provision "unless a different intention appears". Kentucky Statutes, § 2651b-19. Nor is the conclusion of the referee sustained by the ruling in Gage Lumber Company v. McEldowney, 6 Cir., 207 F. 255, for the reason that the facts in that case were entirely different. There was nothing in the contract there involved providing when the title to the property should pass. See opinion of lower court in Re Clairfield Lumber Co., D.C., 194 F. 181.

Reference was made by the referee to the fact that shortly prior to the appointment of a receiver there was considerable activity on the part of Shipley Stave and Lumber Company in replacing tags upon the various piles of lumber in its yards. But there is nothing in the evidence to show any fraud or bad faith in this respect. It was the duty of the bankrupt to keep the lumber marked and identified and to replace such tags as had been defaced or torn off.

It is clear from the evidence that before bankruptcy the bankrupt had accepted orders for and received advancements upon the lumber in question. It was plainly marked as the property of the purchaser and segregated as provided by the contract. The parties intended a bona fide purchase and sale and that title to the property should immediately pass to the purchaser. These facts are sufficient to establish the purchaser's title to the lumber. Stelling v. Jones Lumber Co., 7 Cir., 116 F. 261; In re Ozark Cooperage & Lumber Co., 8 Cir., 180 F. 105; McDermott v. Kimball Lumber Mfg. Co., 102 Ark. 344, 144 S.W. 524, 39 L.R.A.,N.S., 461.

It is insisted by the trustee, however, that the transaction is void as to the trustee under the following provisions of section 1908 of the Kentucky Statutes: "Every voluntary alienation of or charge upon personal property, unless the actual possession, in good faith, accompanies the same, shall be voided as to a purchaser without notice, or any creditor, prior to the lodging for record of such transfer or charge in the office of the county court for the county where the alienor or person creating the charge resides."

The question is whether the marking and segregation of the lumber on the mill yard of the seller, as shown by the evidence in this case constituted sufficient delivery of possession to escape invalidation of the transaction by this statute.

In Penick v. White & Beauchamp, 264 Ky. 172, 177, 94 S.W.2d 338, 340, the Kentucky Court of Appeals said: " * * * in law, there is a delivery of property by a seller to a purchaser when the seller places the property at the disposal of the purchaser and relinquishes to the purchaser the control and right of control of, or dominion over, the property and the purchaser takes, or accepts, the control and right of control, or dominion, over the property."

In the case of In re Ozark Cooperage & Lumber Company, supra, it was said, in reference to compliance with a similar Statute of Missouri, Mo.St.Ann. § 3123,. p. 1958: "After the lumber in controversy was sawed it was piled as directed in the contract, estimated by the petitioner, each stack was marked legibly in front with

petitioner's initials, and the advance payment thereon was made, before the proceedings in bankruptcy were begun. We think this was a sufficient compliance with the statute. It contemplates that in determining whether there has been a sufficient change in possession regard should be had to the character and condition of the property. Some kinds of personal property may be readily delivered from hand to hand, and interested persons may rightfully expect that method to be observed. In other cases, the character of the property and the circumstances of its situation preclude such a delivery; and other indicia of a change of ownership, such as signs, brands and marks are generally accepted as sufficient." [180 F. 106.]

My conclusion is that, under the circumstances disclosed by the evidence, the segregation of the lumber into piles bearing clearly legible indicia of transfer of title to the purchaser W. C. Bartlett Lumber Company evidenced the seller's complete relinquishment of control and dominion over it and the actual delivery of possession to the purchaser with sufficient notoriety to satisfy the requirements of the statute.

The order of the referee should be set aside in so far as it required the petitioner W. C. Bartlett Lumber Company to account for the lumber piled and marked as its property at the time the trustee took over the mill yard.

In view of this conclusion, it is unnecessary to discuss the petitioner's alternative claim to an equitable lien.

The referee's holding that the lumber delivered to W. C. Bartlett Lumber Company within four months prior to bankruptcy was an unlawful preference is based upon his conclusion that at the time of such transactions the relation of debtor and creditor existed between the parties rather than that of vendor and vendee. The evidence clearly shows that no money was loaned to the bankrupt by W. C. Bartlett Lumber Company as an independent transaction, but all that was furnished was in the nature of an advancement made pursuant to the contract and was intended as part payment for the purchase of specific lumber clearly marked and identified. No other relationship was contemplated between the parties except that of vendor and vendee. The purchaser was not engaged in the business of lending money but was a bona fide purchaser of lumber.

When the lumber was shipped to the buyer it was not in payment of debt. To attribute to the transaction such an effect would be to create a relationship entirely different from that which the evidence shows was the bona fide intention of the parties. Hurley v. Atchison T. & S. F. R. Co., 213 U.S. 126, 29 S.Ct. 466, 53 L. Ed. 729; Templeton v. Kehler, D.C., 173 F. 575.

The order of the referee requiring W. C. Bartlett Lumber Company to pay to the trustee the value of the lumber delivered within four months prior to bankruptcy should also be set aside.

Let orders in conformity herewith be submitted for entry.