## VALLEY NAT. BANK v. WESTOVER.
### No. 9415.

Circuit Court of Appeals, Ninth Circuit.

May 22, 1940.

As Modified on Denial of Rehearing
June 19, 1940.

W. L. Barnum and Gust, Rosenfeld, Divelbess, Robinette & Coolidge, all of Phœnix, Ariz., for appellant.

Alice M. Birdsall, of Phœnix, Ariz., for appellee.

Before WILBUR, DENMAN, and MATHEWS, Circuit Judges.

WILBUR, Circuit Judge.

This suit was brought by the trustee in bankruptcy of the Grand Avenue Lumber Company, a corporation, to recover two payments made by the bankrupt to the Valley National Bank, the appellant, on the ground that they were preferential payments made within four months of the petition in bankruptcy. The first payment of $3,040 was made October 13, 1937, and the second of $3,532.99 was made November 22, 1937. Each was paid in satisfaction of a promissory note for the amount paid. The findings and judgment were in favor of the plaintiff. The defendant, Valley National Bank, appeals.

It is admitted that the appellant actually received the payments in the amounts and at the times alleged. The appellant challenges, among others, the finding of fact of the trial court that it had reasonable cause to believe that the payments made to it would effect a preference. We think the evidence is entirely insufficient to support this finding. It appears from the evidence that the bankrupt transacted most of its business with the Bank through Carl Gibson, its vice-president, who died prior to the trial. However, the payments in question were not made to him.

The trustee in bankruptcy relies entirely upon circumstantial evidence to sustain the challenged finding of the trial court. Two circumstances are strongly relied upon by the trustee to sustain the finding of the trial court that the appellant knew that the bankrupt was insolvent when it accepted payment. The first is that knowledge was brought to the bank of a threat to sue the bankrupt early in August, 1937, upon a claim of about $3,000 due from it to the Arizona Sash and Door Company. The second is that on September 20, 1937, an application was made by the bankrupt to the bank for a loan of $20,000 which was refused on the ground the amount was too great for the amount of capital investment in the business. These two circumstances must be considered in connection with all the other evidence relating to the financial situation of the bankrupt and the dealings of the appellant.

62

■ The evidence shows that the bankrupt was engaged in the retail lumber business in Phœnix, Arizona. The business was new, having been started in 1936. Its president was S. B. Shumway, a man of some means, who endorsed the notes held by the bank. Immediately after the payment of the second note to the bank on November 22, 1937, at the instance of S. B. Shumway the business of the bankrupt was placed in the hands of an equity receiver appointed by a state court. At the time the receiver was appointed the bankrupt had on hand a stock of lumber which cost $17,881.12. Its books showed accounts receivable of $57,975.90. Its liabilities scheduled in the receivership were $60,-816.72.

It was developed during the bankruptcy proceedings which were inaugurated January 12, 1938, that there were two other items of indebtedness owing by the company on November 22, 1937. One was for $4,039.01 evidenced by a promissory note payable to the Arizona Concrete Company. The other for $4,321.72 was due to the president of the bankrupt, S. B. Shumway, upon an open account, a salary account and a promissory note. S. B. Shumway was vice-president of the Arizona Concrete Company and caused the equity receivership proceedings to be instituted by that company.

It will be noted that even with these two additional claims, which were controlled by S. B. Shumway, the book value of the bankrupt's property exceeded its liabilities. Appellee claims at book value total assets of $76,958.76, liabilities of at least $75,-685.35 on November 22, 1937.

. To support the contention that the bankrupt was insolvent evidence was given to the effect that in the dry climate of Phœnix, Arizona, there was a shrinkage in the value of lumber due to climatic conditions which was estimated to be about 10 per cent of its cost. Evidence was also adduced to the effect that a deduction of 35 per cent or more of the face value of the bills receivable should be made to cover losses due to bad debts. The record shows an appraisal of the accounts receivable after bankruptcy wherein a large number of bills receivable are appraised as of no value, some at face value, and others at varying proportions thereof. Thus, bills receivable having a face value of $45,785.72 were appraised at $30,206.06, a reduction of $15,024.90.

Without further elaboration of the evidence which was designed primarily to show whether or not the bankrupt was insolvent at the time of the alleged preferential payment of the notes to the bank, it is sufficient to say that the business of the bankrupt was a relatively small one, recently established, and that its solvency from time to time would depend upon its ability to collect obligations due to it from its customers; that the nature of the business was such that in many instances these obligations could have been or should have been secured by mechanics' lien, either actual or inchoate, allowed under the law of Arizona. As late as June 30, 1937, the bankrupt paid a substantial dividend and paid income taxes upon a profit of about $9,000. The audit upon which these dividends were paid was brought to the knowledge of and was considered by the bank at the time two loans aggregating $2,000 were made by it to the bankrupt upon promissory notes with S. B. Shumway as comaker. An expert accountant testified that the bankrupt made a profit up to June 30, 1937, but that shortly thereafter it changed its method of doing business by attempting an increase of the volume of business with a decreased profit in order to get the advantage of Federal Housing Administration loans. It is not claimed that there was any important loss or change in the method of doing business during the period under consideration which would give notice to a casual observer that the company was in any financial difficulty. The expert accountant, called as a witness by the trustee, so testified.

The first circumstance referred to is the knowledge of the bank of the demand for the payment of $3,000 upon an overdue account early in August by the Arizona Sash and Door Company. Its attorney spoke to Carl Gibson, vice-president of the bank, concerning the matter and was requested by him to defer action until Mr. S. B. Shumway returned to Phœnix. This request was granted. The loan of August 12, 1937 of $2,000 was made by the appellant to the bankrupt while this matter was pending. Upon the return of Mr. Shumway half the amount due the creditor was paid, August 26, 1937. The balance was allowed to stand. A short time afterwards $900 more was paid. The creditor continued to furnish material to the bankrupt on credit until the time its property was placed in the hands of a receiver. There

is no indication in this circumstance which would reasonably require an inference of insolvency.

The other circumstance relied upon by the appellee was the application for, and refusal of, a loan of $20,000 to the bankrupt on September 20, 1937, by the appellant. As this loan was larger in amount than the stock carried by the bankrupt, the explanation given by the bank that it refused to make the loan because it was too large for the capitalization of the bankrupt is obviously well founded and involved no conclusion of insolvency.

As to whether or not the payments made by the bankrupt were intended to be preferential and must reasonably have been believed such, it should be said in addition that so far as appears the bank made no effort at any time to collect the amounts it had loaned to the bankrupt. The appellant had no knowledge of impending receivership at the time it accepted the payment of November 22d. Several of the officers of the bank who had to do with the credit departments of the bank were called by the defendant, including the one to whom the payments in question were made. They all testified that they had no knowledge of the insolvency of the bankrupt at the time the payments were made by it to the bank and that so far as they were concerned there was no intent to make or receive a preferential payment and that the payment was made in the ordinary course of business.

We conclude that there is no evidence to justify the finding of the trial court that the appellant knew or should have known that the payment was preferential.

The appellant also contends that inasmuch as it was paid from moneys already on deposit with it by the bankrupt there was no preference because the appellant was already entitled to set off the checking account against the notes it held if and when the bankrupt became insolvent. We do not consider or determine that question because we are satisfied that the judgment must be reversed and judgment awarded the appellant upon the ground that the trustee has failed to establish knowledge, actual or constructive, of the bank that the payments made to it were intended as a preference.

Reversed and judgment ordered for the appellant.