The trustee in bankruptcy of Mica Facing Corporation sues to recover certain payments made to the defendant, Fidelity Union Trust Company. The trustee relies on R.S. 14:14-2, which provides that a transfer by an insolvent corporation of any of its property shall be void as against creditors, except, however, a transfer to a bona fide purchaser for value without notice of the insolvency. *Page 277 
The bankrupt company commenced business in October, 1936, as a subsidiary of Industrial and Chemical Engineers, Inc. Its chief assets were secret formulas for mica facing, still in the developmental stage. At the start, it arranged with the defendant for credit to be extended on its promissory notes secured by assigned accounts receivable. Collections on the assigned accounts were deposited with the defendant in a special collateral account, which was, from time to time, applied on the loans or released to the borrowing company. On May 14th, 1937, the loans reached a peak of $17,050, secured by assigned accounts with a face value of $21,556, and cash in the collateral account of $1,178. Thereafter, no new loans were made and the debt was gradually reduced by payments totaling $13,621. It is these payments that the trustee attacks. They had three sources: Funds of the parent corporation or other third parties; security held on May 14th, 1937; accounts assigned August 25th, 1937. Under the National Bankruptcy Act, where a third person with his own funds pays the bankrupt's creditor or makes an advance to the bankrupt expressly to enable him to pay the creditor, the money so advanced is no part of the debtor's assets and hence no voidable preference or transfer occurs. Assets are not diminished or liabilities increased; there is at most a substitution of one creditor for another. Grub v. General Purchase Contract Corp.,94 Fed. Rep. 2d 70; 6 Am. Jur. 673; Note to 88 A.L.R. 79; 3Col. Bankruptcy (14th ed.) 845. The rule is the same under our New Jersey statute which, like the federal act, is intended to prevent depletion of the insolvent corporation's assets to the prejudice of its creditors as a class. Where the funds with which a creditor is paid come from others than the insolvent corporation, there is no voidable transfer under our statute. This disposes of the first group of payments to defendant.
The accounts held by defendant as security on May 14th, 1937, had been assigned to it at the same time it made the loans, and during a period when the debtor does not appear to have been insolvent or — if it was insolvent — when defendant was without notice of the fact. The defendant obtained a good title to the accounts, which was not prejudiced by the *Page 278 
subsequent insolvency of the debtor before the accounts were collected and credited on the debt.
In August, the defendant demanded further security for the existing indebtedness, and the bankrupt, on August 25th, 1937, assigned to it all its accounts receivable as well as its formulas. If the debtor was then insolvent, the defendant must restore the money it has collected on the assignment. The liabilities of the bankrupt at that time were $29,601 owed to Industrial and Chemical Engineers, Inc., and $10,955 to other creditors. Its ordinary assets amounted to only $12,668, but it carried its formulas, cost of development and organization expense at the sum of $101,287. Looking backward, it is easy to say that the formulas were of no value, but there are indications that in the summer of 1937, they were worth a substantial sum. Campbell, the promotor of the company, testified that in June of that year, he had been offered $50,000 for a controlling interest in the bankrupt and had rejected the offer. His testimony lacks, however, convincing detail. More impressive is the undoubted fact that one Michael Sokol three months later, in November, 1937, became interested in the enterprise and loaned $5,000 to the parent company principally because he thought the formulas had value. Later he put in more money. When a petition for reorganization of the bankrupt was filed in the federal court February 18th, 1938, he still had confidence in the formulas, and did not give up hope until shortly before the order for liquidation was entered June 17th, 1938.
When we inquire as to the ability of the bankrupt to meet its liabilities as they matured, we find that on August 25th, 1937, no creditors were demanding payment except the defendant, and the debtor was able to satisfy it by the assignment which I have mentioned. The situation did not become acute until November, when another creditor threatened action, and it was at this time that Sokol made his loan so that this creditor might be satisfied. The company continued its ordinary business of manufacturing and selling mica facing for six months after the assignment to defendant, and then, for four additional months, under the protection of the federal court. It may not be out of place to notice that the *Page 279 
spring and summer of 1937 were a period of high hopes in the business world. Then, in the fall, there was a lapse back into the depression.
Complainant has the burden of proving that the company was insolvent. Weighing all the factors, I find that it has failed to sustain the burden. The last date on which defendant collected any money by virtue of the assignments was March 30th, 1938. Three months later, on June 22d, Congress amended section 60 of the bankruptcy statute. Complainant contends that this amendment had the effect of avoiding defendant's title to the money which it had collected, or that it imposed a trust on defendant, or else created a debt payable by defendant to complainant in the amount of the money which defendant had received on the assignments. Clearly, the amendment had no such retroactive effect.
Let the bill be dismissed.