In re NIZOLEK FURNITURE & CARPET CO., Inc.

In re JOHN NIZOLEK FURNITURE CO., Inc.

Nos. 3134a, 3132a.

District Court, D. New Jersey.

June 13, 1947.

Bilder, Bilder & Kaufman, of Newark, N. J., for O. F. C. Corporation.

Milberg & Milberg, of Jersey City, N. J., for trustee.

SMITH, District Judge.

This matter is before the Court on a petition for review filed herein by the trustee in bankruptcy, pursuant to Section 39, sub. c of the Bankruptcy Act, as amended, 11 U.S.C.A. 67, sub. c. The petitions for review filed herein by the O.F.C. Corporation, hereinafter referred to as the Corporation, having been abandoned, the only questions for our determination are those raised by the petition of the trustee.

The Bankrupts were engaged in the retail furniture business, and it would appear from the evidence that a majority, if not all, of their furniture sales were on the installment plan. Pursuant to a series of "purchase agreements", the Bankrupts, during the period between July 11, 1938 and December 19, 1941, sold their accounts receivable to the Corporation. The sales of the accounts receivable were made in the usual course of business for a present consideration, and were accompanied by the assignment and delivery to the Corpora-

tion of the supporting obligations, either a "Conditional Sale Contract and Note" or a "Note and Chattel Mortgage" executed by the debtors of the Bankrupts. The Bankrupts retained nothing more than a duplicate ledger account for each of its debtors; these ledger accounts were properly and sufficiently identified as the "Property of the O.F.C. Corporation." It clearly appears from the undisputed testimony that the purchase price was paid to the Bankrupts by the Corporation contemporaneous with the assignment of the accounts receivable and the delivery of the supporting obligations.

The Bankrupts were authorized under the purchase agreements to collect the accounts receivable as "agent of and in trust for the" Corporation. The specific provision embodied in each of the agreements reads as follows: "It is agreed that so long as the First Party (Corporation) consents, the Second Party (Bankrupts) may, as agent of and in trust for the First Party, collect said accounts receivable so purchased without monetary compensation. All amounts so collected shall be held in trust and not used by the Second Party and the full payment thereof remitted to the First Party by postal money order or check not later than the next business day following any collection, together with such detailed report as may be required by the First Party. Such report shall, among other things, advise the First Party of any change of address of any person obligated upon any of said accounts." The Corporation reserved the right to terminate this authority of the Bankrupts at any time by either oral or written notice.

The Bankrupts sold and delivered to the Corporation during the same period, in addition to the accounts receivable hereinabove referred to, individual accounts receivable acceptable to the Corporation. It appears from the evidence that these accounts receivable, designated in the record as "retail purchases," were purchased at a fixed discount pursuant to a general agreement. The Bankrupts were authorized, under "collection agreements," to collect these accounts receivable as "agent of and in trust for the" Corporation. This au-

thority was likewise subject to termination at the will of the Corporation.

A petition in bankruptcy was filed against each of the Bankrupts on March 23, 1942, and orders of adjudication were entered thereon on April 9, 1942. The Corporation promptly filed a petition in which it asserted a right to the accounts receivable and a claim for the moneys collected thereon by the trustee in bankruptcy, the receiver at the time this petition was filed. The trustee in bankruptcy, in response to an order to show cause issued on the said petition, filed an answer and counterclaim in which he challenged the validity of the sales of the accounts receivable on two grounds: first, that the transfers of the accounts receivable were voidable preferences under the Bankruptcy Act as amended; and second, that the sale of the accounts receivable was in violation of the General Corporations Act of New Jersey. The referee in bankruptcy, after hearing, sustained the claim of the Corporation.

Section 60 of the Bankruptcy Act, and particularly subdivisions a and b, 11 U.S.C.A. 96, subs. a and b, is determinative of the question raised by the first ground. This section defines a preference as a "transfer, * * *, of any of the property of a debtor to or for the *benefit of a creditor* for or on account of an *antecedent debt,* made or suffered by such debtor while insolvent and within four months before the filing by or against him of the petition in bankruptcy, * * * *the effect of which transfer will be to enable such creditor to obtain a greater percentage of his debt than some other creditor of the same class.*" (Emphasis by the Court.) It seems reasonably clear, upon proper construction of this section, that there can be no preference in the absence of any one or more of the elements.

The sales of the accounts receivable in the instant case were for a present consideration and many of them were made more than four months prior to the bankruptcy. The contemporaneous assignments of the accounts receivable were not made in payment of or as security for an antecedent debt, and the relationship between

the Bankrupts and the Corporation at the time of the assignments was not that of debtor and creditor. The essential elements of a preference, as defined in the Act, were obviously lacking. Hurley v. Atchison, Topeka & Santa Fe R., 213 U. S. 126, 29 S.Ct. 466, 53 L.Ed. 729; Keystone Warehouse Co. v. Bissell, 2 Cir., 203 F. 652; Ernst v. Mechanics' & Metals National Bank, 2 Cir., 201 F. 664; In re Kayser, 3 Cir., 177 F. 383; In re Shipley Stave & Lumber Co., D.C., 29 F.Supp. 746.

■ The transfer of property in the usual course of business for a present adequate consideration, and not in payment of or security for an antecedent debt, is not a preference. In re Pusey-Maynes-Breish Co., D.C., 37 F.Supp. 316, affirmed 3 Cir., 122 F.2d 606; Doggett v. Chelsea Trust Co., 1 Cir., 73 F.2d 614, 617. Such a transfer does not effect a depletion of the bankrupt's property to the injury of other creditors, an essential element of a preference, Continental Trust Co. v. Chicago Title Co., 229 U.S. 435, 443, 33 S.Ct. 829, 57 L.Ed. 1268; Newport Bank v. Herkimer Bank, 225 U.S. 178, 184, 32 S.Ct. 633, 56 L.Ed. 1042; Bielaski v. National City Bank of New York, 2 Cir., 68 F.2d 723, 724; First National Bank of Danville v. Phalen, 7 Cir., 62 F.2d 21, 22, 88 A.L.R. 75; Citizens' National Bank of Gastonia v. Lineberger, 4 Cir., 45 F.2d 522, 526, but enhances the bankrupt's assets to the extent of the consideration advanced.

The contention of the trustee in bankruptcy that the assignments of the accounts receivable were voidable preferences within the meaning of the act seems to be predicated upon the assumption that the transfers were made as "collateral security" for antecedent debts. There is nothing in the evidence to support this assumption, but we may adopt it for the purpose of discussion. The adoption of this assumption, however, will not avail the trustee in bankruptcy.

■ It is well recognized that a preference may be avoided under Section 60, sub. b of the Bankruptcy Act, 11 U.S.C.A. 96, sub. b, only "if the creditor receiving it * * * has, at the time when the transfer is made, reasonable cause to believe that the debtor is insolvent." Studley v. Boylston National Bank, 229 U.S. 523, 526, 33 S.Ct. 806, 57 L.Ed. 1313; Canright v. General Finance Corp., 7 Cir., 123 F.2d 98; Cusick v. Second National Bank, 73 App.D.C. 16, 115 F.2d 150; Valley National Bank v. Westover, 9 Cir., 112 F.2d 61; McDougal v. Central Union Conference Ass'n, etc., 10 Cir., 110 F.2d 939; Widetzky v. Pilgrim Trust Co., 1 Cir., 108 F.2d 647; Prudential Insurance Co. of America v. Nelson, 6 Cir., 96 F.2d 487; Bender v. Goldman, 3 Cir., 84 F.2d 391. Proof of this prerequisite is significantly absent in the instant case.

■ There is evidence from which it may be inferred that the Corporation was suspicious of the Bankrupts' precarious financial condition in December of 1941, and perhaps prior thereto. This evidence, however, will not support an inference that the Corporation had a reasonable cause to believe that the Bankrupts were insolvent. Ibid. The term "reasonable cause to believe," as used in the Act, presupposes a knowledge of such facts as would produce in the mind of a reasonably intelligent person a well founded belief, as opposed to a mere suspicion, that the bankrupt was insolvent at the time of the transfer. Ibid.

■ It is further argued by the trustee in bankruptcy that the transfer of the accounts receivable constituted a fraud upon the creditors within the rule of Benedict v. Ratner, 268 U.S. 353, 45 S.Ct. 566, 69 L.Ed. 991. The rule of the cited case condemns a transfer as conclusively fraudulent only where the transferor reserves unrestricted "dominion (of the property) inconsistent with the effective disposition of title." It was therein stated, at page 364 of 268 U.S., at page 569 of 45 S.Ct., that this "dominion is the differentiating and deciding element." See also In re Pusey-Maynes-Breish Co., supra; In re Magazine Associates, D.C., 46 F.Supp. 808. The rule is not applicable in the present case.

■ The argument advanced by the trustee in bankruptcy is obviously founded upon the assumption that the Bankrupts re-

1016

served complete dominion over the accounts receivable, inconsistent with their effective sale and transfer to the Corporation. This assumption is not supported by the evidence; in fact, the evidence is to the contrary. The only privilege reserved to the Bankrupts under the "collection agreements" was that of collecting the accounts receivable as "agent of and in trust for the" Corporation. The reservation of this privilege, an advantage to the Bankrupts and a convenience to the Corporation, did not invalidate the assignments. Benedict v. Ratner, supra; Clark v. Iselin, 21 Wall. 360, 22 L.Ed. 568; General Commercial Acceptance Co. v. Lance, 2 Cir., 113 F.2d 300; In re Prudence Co., 2 Cir., 88 F.2d 420; Parker v. Meyer, 4 Cir., 37 F.2d 556; Chapman v. Emerson, 4 Cir., 8 F.2d 353. The use of the proceeds by the Bankrupts, an admitted fact stressed by the trustee in bankruptcy, was clearly in violation of the express provisions of the said agreements. It appears from the undisputed testimony that this use of the proceeds was a misappropriation of funds which the officers of the Bankrupts successfully concealed from the auditors of the Corporation until January of 1942.

It is finally contended that the assignments of the accounts receivable were in contravention of the General Corporation Act and were therefore void. The pertinent provisions of the Act, N.J.S.A. 14:14-2, follow:

"When any corporation shall become insolvent or shall suspend its ordinary business for want of funds to carry on the same, neither the directors nor any officer or agent of the corporation shall sell, convey, assign or transfer any of its real or personal property, choses in action, rights or credits, nor shall they or any of them make any such sale, conveyance, assignment or transfer in contemplation of insolvency.

"Any such sale, conveyance, assignment or transfer shall be null and void as against creditors, except that a bona fide purchase for a valuable consideration, before the corporation shall have actually suspended its ordinary business, by any person without notice of such insolvency or of the sale being made in contemplation of insolvency, shall not be invalidated or impeached."

■ It is well established that insolvency, within the meaning of the statute, "denotes a general inability to meet liabilities as they mature, by means of either available assets or an honest use of credit. The circumstance that the liabilities of a corporation exceed its assets does not necessarily constitute insolvency. This may be the general, primary signification of the term; but it is not the special, statutory sense. A corporation so circumstanced which is actively pursuing its regular business, with a reasonable expectation that business conditions will improve, and that it will be reestablished on a sound financial basis, may not be deemed insolvent within the intent" of the quoted provisions. Hersh v. Levinson Bros., 117 N.J.Eq. 131, 174 A. 736, 739; Schwartz v. Maguire, 131 N.J.Eq. 578, 25 A.2d 920.

■ The assignments of the accounts receivable were "null and void as against creditors" only if the Bankrupts were insolvent, within the meaning of the quoted definition, at the time they were made, and the Corporation had knowledge of such insolvency. Hersh v. Levinson Bros., supra; Schwartz v. Maguire, supra; Sokol v. Fidelity Union Trust Co., 136 N.J.Eq. 276, 41 A.2d 324; Havens v. Mohme Aero Engineering Corp., 135 N.J.Eq. 386, 39 A. 2d 108; Regina Music Box Co. v. F. G. Otto & Sons, 65 N.J.Eq. 582, 56 A. 715; Miller v. Gourley, 65 N.J.Eq. 237, 55 A. 1083. It may be inferred that in December of 1941, when the last assignments were made, the Bankrupts were insolvent, but there is no evidence that the Corporation had notice or knowledge of this insolvency. The purchases of the accounts receivable by the Corporation were bona fide purchases for a valuable consideration before the Bankrupts had actually suspended their ordinary business; in fact, these purchases were made in the ordinary course of business. The statute may not be invoked to invalidate sales and transfers made under these conditions. Ibid.

It should be observed that there is no evidence that the Bankrupts were insolvent when the earlier assignments were

made, to wit, in 1938, 1939, 1940, and the early part of 1941. It cannot be seriously urged that these assignments were void in the absence of such evidence.

The order of the referee in bankruptcy is affirmed.